UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ANDRE GRAVES, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-cv-00446-SRC |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Respondent. | ) | |

**Memorandum and Order**

Petitioner Andre Graves pleaded guilty to being a felon in possession of a firearm.  After

waiving his right to a direct appeal, he now brings a motion to vacate, set aside, or correct his

sentence.  As discussed below, the Court denies his motion.

I.      **Background**

A.      **Factual background**

On July 10, 2023, Graves pleaded guilty to being a felon in possession of a firearm.  Plea

Hr'g, *United States v. Graves*, 4:23-cr-00086-SRC-1, doc. 28 (E.D. Mo. 2023) ("Crim. doc.").

The relevant facts, as detailed in Graves's plea agreement, are as follows:

> On December 17, 2022, St. Louis Metropolitan Police Department officers observed a man wearing gray clothing with a satchel leave a BP gas station at 6001 W. Florissant, St. Louis, Missouri 63136 and approach a Chevy suburban.  The gas station is frequented by gang members and is in the Eastern District of Missouri. The man was not carrying any merchandise and the Chevy was parked at a pump not getting any gas.  The man got in the passenger seat and the Chevy sped off.
>
> Officers saw the Chevy run a stop sign and activated their lights and sirens to conduct a traffic stop.  Once the car eventually stopped, the passenger got out, looked over at police, and immediately fled on foot.  Officers pursued the fleeing suspect.
>
> Officers then observed the suspect, later identified as the Defendant, drop his satchel near Floy Avenue and North Point Boulevard before he ultimately surrendered at 5924 Floy Avenue.  He was arrested without further incident.

Officers retrieved the abandoned satchel and located a Glock 27, .40 caliber semi-automatic pistol (serial no. VDC040) loaded with 12 rounds.  The Defendant's record check revealed a documented gang membership, a convicted felon status, and that the Defendant was on parole for felony tampering and drug trafficking.

The Glock was determined by an expert firearms examiner to have been manufactured outside the State of Missouri, and, therefore, the Glock had been transported across state lines and in interstate commerce prior to or during the Defendant's possession of it.  The Glock can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.

Prior to December 17, 2022, the Defendant was convicted of at least one felony crime punishable by imprisonment for a term exceeding one year.  At the time the Defendant possessed the firearm, he knew he had been convicted of a crime punishable by a term of imprisonment exceeding one year.

Crim. doc. 29 at 2–4 (The Court cites to page numbers as assigned by CM/ECF.).

B.    Procedural background

1.    Criminal proceedings

In March 2023, a federal grand jury indicted Graves for one count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g).  Crim. docs. 1–2.  On July 10, 2023, Graves pleaded guilty to that count and admitted knowingly violating section 922(g), admitted to the facts discussed above, and confirmed that he understood all the elements of the crime to which he was pleading guilty.  Crim. doc. 29 at 1–3.  One day later, Graves filed a motion to travel to his son's funeral.  Crim. doc. 32.  In its response, the United States deferred to the magistrate judge and the Pretrial Department and indicated that, if possible, Graves could coordinate with the facility that housed him to attend the funeral via video conference.  *See* crim. doc. 33.  Graves filed two amended motions indicating that the funeral had been postponed and requesting to attend via videoconference.  *See* crim. docs. 34, 37.

Magistrate Judge Rodney H. Holmes issued an order allowing Graves to attend the funeral via videoconference, crim. docs. 35, 38–39, and Graves's counsel indicated he attended via Zoom.  Crim. doc. 58, Sent'g Hr'g Tr. at 7:1–7:2.

2

The United States Probation Office issued its final presentence investigation report (PSR) in January 2024.  Crim. doc. 41.  The PSR calculated Graves's total offense level to be 17 and his criminal history category at V.  *Id.* at ¶¶ 23–32, 56–58.  Based upon those calculations, the PSR calculated a prison range of 46 to 57 months.  *Id.* at ¶ 92.  Both parties accepted the PSR without objection.  Crim. docs. 43, 45.

On January 11, 2024, the Court sentenced Graves to 48 months in the Bureau of Prisons. Doc. 47.  Following his conviction, Graves filed a pro se motion for sentence reduction under 18 U.S.C. § 3582(c)(2), doc. 51, which this Court denied on February 11, 2025.  Docs. 53–55. Graves is currently serving his sentence at Beckley FCI in West Virginia with a projected release date of September 14, 2027.  *See* Find an inmate, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited June 6, 2026).

### 2.   Civil proceedings

In April 2025, the Court received Graves' motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, *United States v. Graves*, 4:23-cr-00086-SRC-1 (E.D. Mo. 2023) docs. 1, 1-1 ("Civ. doc."); crim. docs. 56, 56-1.  The Court entered its Judgment on January 11, 2024, crim. doc. 47, which Graves did not appeal.  If a criminal defendant does not appeal a judgment, such judgment becomes "final" for purposes of section 2255(f)(1) when the 14-day time for filing a direct appeal expires.  *See Anjulo-Lopez v. United States*, 541 F.3d 814, 816 n.2 (8th Cir. 2008); Fed. R. App. P. 4(b)(1)(A)(i) (providing 14 days to file a notice of appeal).  And Graves's motion for sentence reduction under 18 U.S.C. § 3582(c)(2), crim. doc. 51, which the Court denied on February 11, 2024, docs. 53–54, did not toll the 14-day period, *see* Fed. R. App. P. 4(b)(3)(A) (providing that only motions for a judgment of acquittal under Rule 29, a new trial under Rule 33 based on newly discovered evidence, and an arrest of

3

judgment under Rule 34 toll the 14-day period).  So the Court's judgment against Graves became final as of January 28, 2024, from which he had one year to file his 2255 motion.  *See* 28 U.S.C. § 2255(f)(1).

While the docket shows that his motion was received by April 3, 2025, *see* civ. doc. 1, Graves's Motion indicates that he filled it out on January 7, 2025, *id.* at 11–12, and his mailing envelop indicates the date of postage as January 10, 2025, doc. 1-1.  "Under the prison mailbox rule, a [filing] . . . is deemed timely filed when an inmate deposits [it] in the prison mail system prior to the expiration of the filing deadline. . . . [And] the prison mailbox rule applies to pro se § 2255 motions."  *Moore v. United States*, 173 F.3d 1131, 1135 (8th Cir. 1999).  Because the record shows he mailed his Motion before his January 28, 2024 deadline, *see* doc. 1-1, the Court will consider it timely.

As part of Graves's plea agreement, he "agree[d] to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to . . . [s]ection 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel."  Crim. doc. 29 at 7.  He raises four ineffective-assistance-of-counsel claims, and one claim that his guilty plea was entered under duress.  *See* civ. doc. 1 at 4.

## II.    Standard

### A.    Section 2255

Under section 2255, a federal prisoner "may move the court [that] imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that the court imposed "the sentence . . . in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  If a petitioner claims his sentence violates the Constitution or laws of the United States, the petitioner

4

must establish that the violation constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (first quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989); and then citing Fed. R. Crim. P. 32(d) advisory committee notes to the 1983 amendments).  Generally, to obtain section 2255 relief based on a claim, a petitioner must have raised the underlying error on direct appeal.  *See Roundtree v. United States*, 885 F.3d 1095, 1097 (8th Cir. 2018).  If a petitioner failed to do so, the Court generally considers the claim procedurally defaulted, rendering it ineffective in establishing a right to section 2255 relief.  *See id.*

Petitioners can also waive their rights to a direct appeal.  *See United States v. Goings*, 200 F.3d 539, 543 (8th Cir. 2000); *United States v. His Law*, 85 F.3d 379, 379 (8th Cir. 1996).  And waive their rights to collateral § 2255 review.  *DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000).  However, district courts must still "address[] the substance" of "claim[s] . . . not precluded by . . . waiver."  *Id.* at 924.

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994).  A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief."  *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)).  However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v. United States*, 905 F.2d 218, 220–21 (8th Cir. 1990)).

5

### B.      Ineffective assistance of counsel

A petitioner may raise an ineffective-assistance-of-counsel claim for the first time in a section 2255 motion, even if he could have raised the same claim on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish ineffective assistance of counsel, a petitioner "faces a heavy burden." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). He must show both that his counsel's performance was deficient and that the deficient performance prejudiced the petitioner's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001). An attorney's performance is deficient only if it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88; *see also Sera*, 267 F.3d at 874. Two substantial impediments exist to making such a showing. First, "a 'strong presumption'" exists "that counsel's conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689). Second, "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

Additionally, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). To satisfy *Strickland*'s prejudice element in the context of plea negotiations, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill*, 474 U.S. at 59).

### III.    Discussion

Although Graves's Petition contains all claims in one ground for relief, the Court finds that he actually raises five grounds:  (1) counsel failed to file relevant and suggested motions on his behalf, (2) counsel was aware that his "writ" was violated, (3) counsel neglected to argue on his behalf regarding a consecutive sentence the judge imposed knowing the state dropped his charges, (4) counsel knowingly proceeded with entering Graves's guilty plea three days after Graves found out that his son was shot and killed, and (5) his guilty plea was entered under duress.  *See id.*  The Court addresses each of Graves's arguments in turn.

### A.    Whether Graves's counsel was deficient for failing to file relevant and suggested motions

Graves first argues that his "[c]ounsel failed to file relevant and suggested motions on [his] behave [sic]."  Doc. 1 at 4.  But he does not specify what these motions were, or why his attorney was constitutionally defective for failing to file them.  *See Strickland*, 466 U.S. at 687–90.  When a petitioner's "allegations . . . [are] so vague or conclusory, . . . [they can] warrant dismissal for that reason alone."  *Blackledge v. Allison*, 431 U.S. 63, 75 (1977) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)) (cleaned up); *see also Voytik v. United States*, 778 F.2d 1306, 1308–10 (8th Cir. 1985) (noting that "the principle of liberal construction will not save . . . conclusory or non[-]specific factual allegations" and dismissing a vague claim).  And the Court will not supplement facts to make Graves's claim legally viable.  *Cf. Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004).  Accordingly, the Court denies Graves relief on this ground.

### B.    Whether Graves's counsel was deficient for his awareness that Graves's "writ" was violated

Graves next argues that "[c]ounsel was also awere [sic] that [his] writ was violated."  Doc. 1 at 4.  But he does not say who violated his "writ," what "writ was violated," when his attorney was aware of his writ's alleged violation, and why his attorney was constitutionally

defective.  *See Strickland*, 466 U.S. at 687–90.  Just like his first ground for relief, Graves's

second ground is vague and conclusory, *see Blackledge*, 431 U.S. at 75; *Voytik*, 778 F.2d at

1308–10.  The United States thinks that Graves is arguing that his writ under the Interstate

Agreement on Detainers Act (IADA) was violated.  Doc. 8 at 8–9.  While it's unclear whether

Burks argues an IADA violation, the Court finds that, for the reasons explained by the United

States, no violation occurred.  *Id.*  Accordingly, the Court denies Graves relief on this ground as

well.

> **C.** **Whether Graves's counsel was deficient for neglecting to argue against a consecutive sentence**

Graves next argues that his counsel "neglected to argue on [his] behave [sic] regarding a

consecutive sentence the judge imposed knowing the state dropped the charges."  Civ doc. 1 at 4.

It is unclear what Graves means by "the state dropped the charges," civ. doc. 1 at 4, and the

Court will not guess, *cf. Stone*, 364 F.3d at 914–15.  When Graves committed the underlying

offense, however, "he was serving a period of parole" for some state law offenses.  Crim. doc. 41

at ¶ 93.  Parole for these offenses was subsequently revoked, and Graves was accordingly

imprisoned.  *Id.*

Based on the recommendations in Graves's Presentence Investigation Report, this Court

could have imposed on Graves a sentence "to run consecutively, concurrently, or partially

concurrently" to his imprisonment for the state-law offenses.  *Id.*  The report ultimately

recommended that Graves's sentence for the instant offence run "consecutively to the sentence

imposed for [Graves's parole] revocation in order to achieve an incremental punishment for both

the instant offense and the violation of parole."  *Id.*

A court may dismiss a ground for relief "if the record affirmatively refutes the factual

assertions upon which it is based."  *Shaw*, 24 F.3d at 1043 (citing *Larson*, 905 F.2d at 220–21).

Despite Graves's contrary assertion, his attorney argued at Graves's sentencing hearing against

imposing a consecutive sentence, asking that Graves instead serve his "sentence . . . concurrently with the state cases which he was serving on parole when the instant case arose." Crim. doc. 58, Sent'g Hr'g Tr. at 7:21–7:23. His attorney made this recommendation after detailing various hardships that Graves experienced. *See id.* at 6:14–7:16. The Court ultimately imposed a sentence that ran consecutively to Graves's state sentence. *Id.* at 15:14–15:17.

Therefore, the Court finds that the record affirmatively refutes the factual assertion that Graves's attorney "neglected to argue . . . regarding a consecutive sentence." Civ. doc. 4 at 1; *see also Shaw*, 24 F.3d at 1043 (citing *Larson*, 905 F.2d at 220–21). And because Graves fails to identify how his attorney's advocacy was constitutionally ineffective, *see Strickland*, 466 U.S. at 687–90, the Court denies Graves relief on this ground.

### D.     Whether counsel was deficient for entering Graves's guilty plea three days after Graves found out that his son was shot and killed

Graves also argues that "[c]ounsel knowingly proceeded with the entering of a guilty plea three days after [he] found out that [his] son was shot and killed." Civ. doc. 4 at 1. While tragic, this fact does not establish that Graves's counsel was constitutionally ineffective. *See Strickland*, 466 U.S. at 687–90. To make such a showing, Graves must show both that his counsel's performance was deficient and that the deficient performance prejudiced his case. *Id.*; *see also Hill*, 474 U.S. at 58 (noting that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"). To satisfy *Strickland*'s prejudice element in the context of plea negotiations, Graves must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington*, 739 F.3d at 1090 (quoting *Hill*, 474 U.S. at 59).

The Court finds that the factual record precludes Graves from making such a showing. *See Shaw*, 24 F.3d at 1043. At his plea hearing, the Court asked Graves whether he is feeling well, to which Graves responded "[a]s can be, yes, sir." Crim. doc. 60, Plea Hr'g Tr. at 6:18–

9

6:19.  Graves also told the Court that he was not under the care of a doctor, and that his mind was clear.  *Id.* at 6:20–6:25.  While Graves told the Court that he did not take a blood pressure pill that he was supposed to take, he assured the Court that this did not impact his ability to understand or appreciate the events of the plea hearing.  *See id.* at 6:7–6:17.  The Court found that Graves was "competent to proceed."  *Id.* at 7:1–7:7.

And when the Court asked Graves whether "anyone at any time made any . . . promises, representations, . . . assurances[,] . . . [or] threats against [him] in an attempt to get [him] to plead guilty or to sign the plea agreement in this case," Graves answered, "No sir."  *Id.* at 11:21–12:4.  Additionally, the Court—on its own initiative—provided extensive information to Graves regarding the implications of his guilty plea.  Among other things, the Court clarified to Graves that he has the right to go to trial, and that entering a guilty plea waives that right.  *Id.* at 8:9–9:21.  The Court also confirmed with Graves that there are no witnesses anywhere that might be helpful to his case who have not yet been contacted, but should be contacted before proceeding further.  *Id.* at 9:22–10:1.  After confirming that Graves read the entirety of his plea agreement, *id.* at 11:3–11:11, the Court went through each element of his offense and confirmed that Graves's actions met each element.  *Id.* at 13:19–14:22.  The Court also explained to Graves the waivers of his right to appeal and seek collateral relief in his plea agreement, all of which Graves understood.  *Id.* at 18:18–19:17.  Then, the Court clarified that the plea agreement is not binding on the Court.  *Id.* at 13:14–13:17; 20:4–20:7.  The Court detailed the rights that Graves stands to lose upon conviction, along with the possible ranges of punishment that he could face.  *Id.* at 21:21–23:23.

Graves then answered "no" when the Court asked him if he had any questions, and answered "yes" when asked whether he is "pleading guilty because [he is] guilty as charged."  *Id.* at 27:3–27:8.  Accordingly, the Court found that Graves's guilty plea was "a knowing and

voluntary plea made willingly and intelligently." *Id.* at 27:9–27:16.  Notably, Graves also told the Court that he had no complaints with his attorney, and answered "[y]es, sir" when asked whether he is "fully satisfied with the services" that she performed. *Id.*

The record reveals no facts that Graves's son's death compromised his ability to enter a plea of guilty.  Nor does the record reveal any indication that Graves's attorney committed any errors, without which Graves would have proceeded to trial. *See Covington*, 739 F.3d at 1090. Accordingly, the Court denies Graves relief on this ground.

### E.      Whether Graves's guilty plea was entered under duress

Finally, Graves claims that his "[g]uilty [p]lea was entered under duress."  Civ. doc. 1 at 4.  Petitioners like Graves may raise challenges to their plea agreement on a § 2255 collateral attack, even if they waived—to any extent—their right to appeal or file § 2255 motions more generally. *See DeRoo*, 223 F.3d at 923.

However, Graves provides no specific facts to support his claim that his guilty plea was entered under duress.  Along with being vague and conclusory, *see Blackledge*, 431 U.S. at 75; *Voytik*, 778 F.2d at 1308, Graves's claim also contradicts the factual record, *see Shaw*, 24 F.3d at 1043.  As discussed above, *supra* III.D, Graves entered his plea knowingly and voluntarily. Accordingly, the Court denies Graves relief on this ground.

## IV.    Certificate of appealability

For the Court to issue a certificate of appealability, Graves must make a substantial showing that he suffered the denial of a constitutional right. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  Specifically, he needed to establish that reasonable jurists could debate the issues, a court could resolve the issues differently, or the issues deserve further proceedings. *Id.* But as explained above, Graves has not made such a showing.  Therefore, the Court declines to issue a certificate of appealability in this case.

## V. Conclusion

The Court finds that the record conclusively establishes that 28 U.S.C. § 2255 does not entitle Graves to relief or an evidentiary hearing.  Accordingly, the Court denies Graves's [1] Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  A separate Judgment accompanies this Memorandum and Order.

So ordered this 8th day of June 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE